SYLLABUS

This syllabus is not part of the Court's opinion.  It has been prepared by the Office of the Clerk for the convenience of the reader.  It has been neither reviewed nor approved by the Court and may not summarize all portions of the opinion.

**Monarch Communities, LLC v. Township of Montville (A-70-24) (090407)**

**Argued November 18, 2025 -- Decided July 13, 2026**

**JUSTICE PATTERSON, writing for a unanimous Court.**

In the context of this dispute about a use variance application, the Court considers whether the Legislature's 1997 Amendment to N.J.S.A. 40:55D-70, a provision of the Municipal Land Use Law (MLUL), requires a change to the four-step procedure the Court adopted "as a general guide to municipal boards when balancing the positive and negative criteria" in variance applications for "inherently beneficial uses" under the MLUL in Sica v. Board of Adjustment of Wall, 127 N.J. 152, 165-66 (1992).

The Township of Montville Zoning Board of Adjustment (Board) denied the application of a developer, Monarch Communities, LLC (Monarch), for a use variance to construct a senior living facility.  It is undisputed that the senior housing use for which Monarch sought the use variance is an inherently beneficial use as the MLUL defines that term in N.J.S.A. 40:55D-4.

Monarch and another developer, JMC Investments, LLC (JMC), challenged the Zoning Board's decision.  The trial court reversed, remanding for the Board to consider conditions for the approval of the application.  The Appellate Division affirmed.  The Court granted certification.  260 N.J. 614 (2025).

**HELD:**  Because the standard the Court prescribed in Sica for use variances regarding inherently beneficial uses does not entirely align with N.J.S.A. 40:55D-70's language following the 1997 Amendment, the Court revises the fourth step of that standard to incorporate the statutory language regarding the second negative criterion.  So that the revised standard may be applied to the variance application in this case, the Court reverses the Appellate Division's judgment and remands this matter to the appellate court for application of that standard to the record.

1.  When it enacted the MLUL, the Legislature sought to encourage municipalities to make zoning decisions by ordinance rather than by variance.  Variances remain necessary, however, because the law cannot anticipate all of the circumstances that might arise in the land use context.  N.J.S.A. 40:55D-70(d) addresses use variances,

1

which permit a use of land that is otherwise prohibited by the zoning ordinance. The MLUL recognizes a special category of variances for a proposed development that would serve an "inherently beneficial use." N.J.S.A. 40:55D-4. N.J.S.A. 40:55D-70(d) authorizes a board of adjustment, "in particular cases for special reasons," to grant certain variances. The "special reasons" requirement of the statute is referred to as the "positive criteria" for a use variance. The concluding section of N.J.S.A. 40:55D-70 sets forth two "negative criteria," which require an applicant for a use variance to show that the variance (1) "can be granted without substantial detriment to the public good" and (2) "will not substantially impair the intent and the purpose of the zone plan and zoning ordinance." (pp. 14-17)

2. Case law has addressed the procedural requirements governing variance applications under N.J.S.A. 40:55D-70. In Medici v. BPR Co., Inc., the Court required enhanced proofs and findings about the second negative criterion "if the use for which a variance is sought is not one that inherently serves the public good." 107 N.J. 1, 4 (1987). In Sica, the Court prescribed a procedure for variance applications for inherently beneficial uses. 127 N.J. at 159-68. The Court held that Medici "does not apply to inherently beneficial uses" and thus considered "to what extent a use variance involving an inherently beneficial use must satisfy the negative criteria." Id. at 160-62. The Court suggested a four-part procedure. Id. at 165-66. First, the Court stated that a board "should identify the public interest at stake," noting that "[s]ome uses are more compelling than others" and providing examples of uses "sufficiently beneficial to satisfy the positive criteria." Id. at 165. Second, a board "should identify the detrimental effect that will ensue from the grant of the variance." Id. at 166. Third, "in some situations, the local board may reduce the detrimental effect by imposing reasonable conditions on the use," and "the weight accorded the adverse effect should be reduced" accordingly. Ibid. Fourth, a board "should then weigh the positive and negative criteria and determine whether, on balance, the grant of the variance would cause a substantial detriment to the public good." Ibid. The Sica test thus includes statutory language regarding the application of N.J.S.A. 40:55D-70's first negative criterion, but not its second negative criterion. (pp. 18-23)

3. Five years after Sica, in 1997, the Legislature amended N.J.S.A. 40:55D-70 by adding the underscored language to read that "[n]o variance . . . may be granted under the terms of this section, including a variance . . . involving an inherently beneficial use, without a showing that [it] can be granted without substantial detriment to the public good and will not substantially impair the intent and the purpose of the zone plan and zoning ordinance." The Court reviews the legislative history of the 1997 Amendment, as well as subsequent court decisions. (pp. 23-26)

4. The Court concludes that the standard prescribed by Sica should be revised to incorporate N.J.S.A. 40:55D-70's statutory language regarding the second negative

2

criterion. The Court amends the fourth step of the <u>Sica</u> standard to require that, prior to undertaking the balancing that step requires, the zoning board "should determine whether the applicant has made a showing that the variance . . . sought will not substantially impair the intent and the purpose of the zoning plan and zoning ordinance," and should deny the variance "[i]f the applicant has not made such a showing." The Court also provides detailed guidance about the application of the new standard, explaining (1) that the showing under the second criterion is not equivalent to the <u>Medici</u> enhanced quality of proof requirement; (2) that the applicant cannot rely solely on the designation of the proposed use as an inherently beneficial use, but must instead present a showing analyzing the impact of the variance sought on the zoning plan and zoning ordinance; (3) that the board's denial of a prior application for a variance for the same property is not itself dispositive, but may be an important consideration; and (4) that governing bodies and planning boards should document in detail their findings regarding zoning for inherently beneficial uses in the master plan and development regulations, and that they should revise those findings at least once a decade to account for changing conditions, see N.J.S.A. 40:55D-89, -89.1. (pp. 26-29)

5. In remanding the matter, the Court asks the Appellate Division to apply the <u>Sica</u> standard as amended in its opinion to the record in this case and provides further guidance. The Court expresses no view with regard to the outcome of the Appellate Division's application on remand of the revised <u>Sica</u> standard. (pp. 29-30)

**REVERSED and REMANDED to the Appellate Division.**

**CHIEF JUSTICE RABNER and JUSTICES PIERRE-LOUIS, WAINER APTER, FASCIALE, NORIEGA, and HOFFMAN join in JUSTICE PATTERSON's opinion.**

3

Monarch Communities,
LLC, a Limited Liability Company
of the State of Delaware,

Plaintiff,

v.

Township of Montville,
Mayor and Council of
the Township of
Montville,

Defendants,

and

Township of Montville
Zoning Board of
Adjustment,

Defendant-Appellant.

JMC Investments, LLC,
a New Jersey Limited Liability
Company,

Plaintiff-Respondent,

v.

Township of Montville,
Mayor and Council of the

Township of Montville,

Defendants,

and

Township of Montville
Zoning Board of
Adjustment,

Defendant-Appellant.

---

On certification to the Superior Court,
Appellate Division.

---

Argued
November 18, 2025

Decided
July 13, 2026

---

Kelly M. Carey argued the cause for appellant (Pashman Stein Walder Hayden, attorneys; Kelly M. Carey and Bruce J. Ackerman, on the briefs).

Antimo A. Del Vecchio argued the cause for respondent (Beattie Padovano, attorneys; Antimo A. Del Vecchio, of counsel, and Daniel L. Steinhagen, on the brief).

---

JUSTICE PATTERSON delivered the opinion of the Court.

---

In this appeal, we construe N.J.S.A. 40:55D-70, a provision of the Municipal Land Use Law (MLUL), N.J.S.A. 40:55D-1 to -171.

The Legislature mandated in N.J.S.A. 40:55D-70 that an applicant for a use variance satisfy both "positive criteria" and "negative criteria" in order for its application to be granted. The provision prescribing the "negative criteria"

2

requires an applicant for a use variance to show that the variance (1) "can be granted without substantial detriment to the public good" and (2) "will not substantially impair the intent and the purpose of the zone plan and zoning ordinance." N.J.S.A. 40:55D-70.

In Sica v. Board of Adjustment of Wall, this Court prescribed a four-step procedure "as a general guide to municipal boards when balancing the positive and negative criteria" in variance applications for "inherently beneficial uses" under the MLUL. 127 N.J. 152, 165-66 (1992). The Sica test includes statutory language regarding the application of N.J.S.A. 40:55D-70's first negative criterion -- but not its second negative criterion -- in that setting.

The Legislature subsequently enacted an amendment to N.J.S.A. 40:55D-70. L. 1997, c. 145, § 1. That 1997 Amendment made clear that all applicants for use variances under N.J.S.A. 40:55D-70 -- including applicants seeking variances for inherently beneficial uses -- are required to make showings with respect to both negative criteria. Ibid.

This appeal requires that we construe N.J.S.A. 40:55D-70, as amended by the 1997 Amendment. Pursuant to that provision, the Township of Montville Zoning Board of Adjustment (Zoning Board or Board) denied the application of a developer, Monarch Communities, LLC (Monarch), for a use

3

variance to construct a senior living facility. The proposed facility would serve an "inherently beneficial use" under the MLUL.

Monarch and another developer, JMC Investments, LLC (JMC), challenged the Zoning Board's decision in actions in lieu of prerogative writs. The trial court reversed, remanding for the Zoning Board to consider conditions for the approval of the application, and the Appellate Division affirmed the trial court's determination. We granted the Zoning Board's petition for certification.

Because the standard the Court prescribed in Sica for use variances regarding inherently beneficial uses does not entirely align with N.J.S.A. 40:55D-70's language following the 1997 Amendment, we revise the fourth step of that standard to incorporate the statutory language regarding the second negative criterion. So that the revised standard may be applied to the variance application in this case, we reverse the Appellate Division's judgment and remand this matter to the appellate court for application of that standard to the record.

I.

A.

The land use dispute before us concerns an eight-acre property in Montville Township, designated as 205-207 Changebridge Road. The property

4

consists of a farm and a small single-family home, zoned for residential use under the Township's R-20A zone. It is located on a main road and is adjacent to or near single-family homes, a townhouse development, a childcare facility, a gas station, a bus depot, and the Township's municipal complex.

In 2018, Allegro Development, LLC (Allegro) filed an application to rezone the property to permit the construction of 150 senior independent living, assisted living, and memory care units. The Township's planner recommended that the Township Committee refer the application to the Planning Board, but the Township Committee declined to do so.

The following year, the Planning Board considered an amendment to the land use element of the Township's Master Plan. That amendment created a "Senior Housing Overlay" designation to afford developers "the option of redeveloping" designated sites "for various types of senior housing (including active adult and age-restricted independent living developments in townhouse or multifamily-type structures, as well as assisted living, memory care, and continuing care retirement communities)" while "retaining the developers' option to develop in accordance with the underlying zone district for the properties."

As the minutes and transcript of a December 12, 2019 Planning Board meeting make clear, the Planning Board considered including the property at

5

issue in this appeal as part of the Senior Housing Overlay Zone. According to the minutes, during the public portion of the meeting, several local residents opposed the inclusion of the property in that zone, citing concerns about open space, land preservation, and wetlands disturbance. Residents asserted that the inclusion of the property conflicted with the Township's Land Use Plan Amendment's goals of preserving remaining farmland, supporting environmental sustainability, and encouraging senior housing and assisted living. One resident presented a petition signed by more than six hundred residents requesting that the property "be either preserved as farmland and/or acquired as open space." On the record, Planning Board members discussed the possibility of purchasing the property for open space.

In its Land Use Plan Amendment, the Planning Board did not include the disputed property in the Senior Housing Overlay Zone. The Planning Board instead identified two other properties to be included in the Senior Housing Overlay Zone and designated a third property as "Medium Density Residential - Residential Health Care Facility Option," which would permit the construction of a residential health care facility with sixty-five or fewer bedrooms.

The Planning Board identified, as a goal of its Land Use Plan Amendment, "encouraging a variety of senior housing opportunities in order to

6

allow aging residents to remain in the community." In its policy statement in support of that goal, the Planning Board recommended that the Township "consider identifying appropriate locations for active adult and age-restricted independent living and memory care facilities" and "consider preparing a Land Use Plan amendment which designates specific locations for future development of senior housing."

According to a July 9, 2022 letter from the Township's counsel to the trial court, the Planning Board adopted the Master Plan update and land use element "in or about early 2020," but, as of the date of the letter, the Township Committee had "not as yet voted upon that implementing ordinance."

B.

On February 20, 2020, Monarch submitted a land development application to the Zoning Board, proposing a 165-unit, three-story senior housing community with eighty-one congregate apartment units, fifty-eight assisted living units, twenty-six memory care units, and a fifteen percent set-aside for affordable housing. It sought a use variance pursuant to N.J.S.A. 40:55D-70(d)(1) that would authorize the proposed development notwithstanding its incompatibility with the zoning of the property. It is undisputed that the senior housing use for which Monarch sought the use

7

variance is an inherently beneficial use as the MLUL defines that term in N.J.S.A. 40:55D-4.

Monarch also sought bulk variances under N.J.S.A. 40:55D-70(c), requesting waivers of restrictions on maximum building height and number of stories; maximum building coverage; maximum impervious coverage; parking area and internal roadway setbacks; maximum fence height; and the use of a monument sign; as well as design waivers for not providing a bicycle lane and for steep slope disturbance.

The Zoning Board held a hearing on Monarch's application over seven days. Monarch's planner testified about the application of the Sica test to the proposed senior housing facility. The planner acknowledged that the Planning Board had identified sites other than the property at issue as appropriate locations for senior housing but testified that those sites were not suitable for that use and that the developments contemplated at those sites were different from the senior living facility that Monarch proposed to construct.

As the hearing concluded, Monarch submitted a revised site plan that eliminated the need for most of the bulk variances it had requested and offered to consider any conditions that the Zoning Board would request to address the Board's concerns about the application.

8

The Zoning Board denied Monarch's application. In a written decision and resolution, the Zoning Board acknowledged the "public interest in providing adequate senior housing living units in appropriate locations, particularly as to assisted living and memory care units as included in this application," and agreed that "the use applied for is inherently beneficial."

The Zoning Board concluded, however, that "the public benefits to be derived from having this combined senior citizen facility at this site are substantially outweighed by the detrimental effects upon the integrity of the zoning plan aimed at having exclusively single family residences on this site and specifically omitting this use." It found that the proposed variance would result in a "substantial detriment to the zone plan and zoning ordinance by the various elements of the application." The Zoning Board cited (1) "the uses for this property," given the Township's prior rejection of those uses on the site; (2) "the excess density at 165 units"; (3) the "excess impervious coverage and its effect visually and upon drainage"; (4) the question whether applicant's drainage plan could be achieved without alteration of a third-party easement; and (5) concerns about traffic and parking. The Board ruled that no conditions would "lessen or eliminate those detriments" in the application as presented.

C.

1.

Monarch and JMC challenged the Zoning Board's decision in separate actions in lieu of prerogative writs. The trial court consolidated the actions.

Following a bench trial, the trial court reversed the Zoning Board's decision. The court held that the proposed use in this matter is an inherently beneficial use, and that it presumptively satisfies N.J.S.A. 40:55D-70's positive criteria. Citing Sica, 127 N.J. at 165-66, the trial court held that the record did not support the conclusion that "the project is too big, too noisy and will create too much traffic," and that the evidence did not explain why the size of the proposed facility "is a detriment, visual or otherwise."

The trial court dismissed as irrelevant evidence that the Township excluded the disputed property from the Senior Overlay Zone in its 2019 Master Plan update. The court viewed Sica to require that "negative impacts be substantial" in order to defeat a variance application for an inherently beneficial use, and it found no such substantial negative impact in its review of the application.

The trial court remanded the matter to the Zoning Board "for conditions it may wish to impose including but not limited to drainage," but it barred the

10

Board from reducing the number of units in the proposal. The court retained jurisdiction.

Monarch then terminated its contract to purchase the property, leaving JMC as the contract purchaser and the sole party pursuing the variance.

On remand, the Zoning Board held an additional hearing. It imposed thirty-seven conditions on the proposed development and reserved its appellate rights. The Zoning Board appealed the trial court's judgment.

2.

The Appellate Division affirmed. It acknowledged the deferential standard governing appeals from local zoning boards but rejected the Zoning Board's argument that the application in this case "was substantially inconsistent with the intent and purpose of the zoning plan and township ordinances." The court stated that the Township's master plan had "not yet been adopted," that the Township's plan did not include "a specific vision" for the property, and that a master plan "controls only once it has gone into effect." The Appellate Division ruled that the zoning of other properties for senior care did not preclude rezoning the property in dispute.

The Appellate Division held that the Zoning Board acted unreasonably when it concluded that the detrimental effects of the proposed development's "allegedly poor aesthetics, including height and density; noise and traffic

11

levels; and parking" warranted denial of the variance application, and it found ample support in the record for the trial court's findings rejecting those claims.

3.

We granted the Zoning Board's petition for certification, in which it contended that the Appellate Division did not properly apply N.J.S.A. 40:55D-70's second negative criterion to this case. 260 N.J. 614 (2025).

II.

The Zoning Board asserts that when the Legislature adopted the second negative criterion, it intended to protect municipal authority to zone in accordance with land use planning principles stated in a master plan. It argues that under the Sica test, the Board properly afforded substantial weight to its rejection of Allegro's 2018 application to rezone the disputed property and the Township's 2019 amendment of its Master Plan excluding that property from the Senior Housing Overlay. It asserts that the Appellate Division improperly declined to consider the Township's zoning plan when it reviewed the trial court's determination.

JMC argues that if the Court were to adopt the Zoning Board's position, it would nullify the holding in Sica that variance applications for inherently beneficial uses are not subject to the enhanced standard of proof imposed on non-inherently beneficial variance applications under Medici v. BPR Co., Inc.,

107 N.J. 1, 21 (1987). JMC asserts that in Salt & Light Co. v. Willingboro Township Zoning Board of Adjustment, 423 N.J. Super. 282, 287 (App. Div. 2011), the Appellate Division properly determined that "the satisfaction of the negative criteria involves weighing the evidence relating to the positive and negative criteria under the procedures set forth in Sica." It contends that under the Sica balancing test, the advantages of its proposed development outweigh any potential detrimental effects.

III.

A.

"[Z]oning boards, 'because of their peculiar knowledge of local conditions[,] must be allowed wide latitude in the exercise of delegated discretion.'" Price v. Himeji, LLC, 214 N.J. 263, 284 (2013) (second alteration in original) (quoting Kramer v. Bd. of Adjustment, 45 N.J. 268, 296 (1965)). A zoning board's land use decisions are thus entitled to a presumption of validity. Ibid. A court should not overturn a board's action "unless it is found to be arbitrary and capricious or unreasonable, with the burden of proof placed on the plaintiff challenging the action." Dunbar Homes, Inc. v. Zoning Bd. of Adjustment of Franklin, 233 N.J. 546, 559 (2018) (quoting Grabowsky v. Township of Montclair, 221 N.J. 536, 551 (2015)).

An appellate court reviews de novo the statutory interpretation decisions of a trial court or the Appellate Division. Cowan v. State Parole Bd., 263 N.J. 91, 105 (2026).

We construe N.J.S.A. 40:55D-70 in accordance with familiar principles. "Our primary goal . . . 'is to discern and effectuate the intent of the Legislature.'" Shipyard Assocs., LP v. City of Hoboken, 242 N.J. 23, 38-39 (2020) (citing Murray v. Plainfield Rescue Squad, 210 N.J. 581, 592 (2012)). We "consider[] 'the statute's plain language, ascribing to the words used "their ordinary meaning and significance."'" Id. at 38 (quoting Murray, 210 N.J. at 592). If the statute is ambiguous, we may consider extrinsic interpretive aids such as legislative history in order to discern the Legislature's intent. DiProspero v. Penn, 183 N.J. 477, 492-93 (2005).

B.

1.

"The authority of a public entity to plan and zone and, in so doing, to impose conditions on a party's use of its property, is a delegation of the police power." Nuckel v. Borough of Little Ferry Plan. Bd., 208 N.J. 95, 101 (2011); accord Riggs v. Township of Long Beach, 109 N.J. 601, 610 (1988). "Because the planning and zoning power stems from legislative allowance, it must be

14

exercised in strict conformity with the delegating enactment -- the MLUL."

Nuckel, 208 N.J. at 101.

When it enacted the MLUL, the Legislature sought to "encourag[e] municipalities to make zoning decisions by ordinance rather than by variance." Medici, 107 N.J. at 5; see also Sica, 127 N.J. at 161-62 (reiterating the holding in Medici that under the MLUL's 1985 amendments, "rezoning of a municipality should be accomplished not by a board of adjustment through the liberal grant of use variances for commercial purposes, but by the governing body through amendment to the zoning ordinance").

That legislative preference is reflected in several MLUL provisions, including N.J.S.A. 40:55D-70, which imposes reporting and amendment recommendation requirements on boards of adjustment; N.J.S.A. 40:55D-89, which mandates that, at least every ten years, the governing body "provide for a general reexamination of its master plan and development regulations by the planning board, which shall prepare and adopt by resolution a report on the findings of such reexamination"; and N.J.S.A. 40:55D-89.1, which provides that if the planning board has failed to adopt a reexamination report in accordance with N.J.S.A. 40:55D-89, there is "a rebuttable presumption that the municipal development regulations are no longer reasonable."  Those provisions ensure "that a municipality's master plan and zoning ordinance

15

reflect contemporary needs and conditions, and that the governing body is kept informed of provisions of the zoning ordinance that generate variance requests." Medici, 107 N.J. at 20.

Notwithstanding the legislative preference for zoning by ordinance, variances "are necessary because the law cannot anticipate all of the circumstances that might arise in the land use context." Cox & Koenig, N.J. Zoning & Land Use Admin. § 28-1 (2025).

N.J.S.A. 40:55D-70(c) addresses bulk variances, and N.J.S.A. 40:55D-70(d) addresses the category of variances at issue here, use variances. "A use variance, as the term implies, permits a use of land that is otherwise prohibited by the zoning ordinance." Nuckel, 208 N.J. at 101.

The MLUL recognizes a special category of variances for a proposed development that would serve an "inherently beneficial use," defined as "a use which is universally considered of value to the community because it fundamentally serves the public good and promotes the general welfare." N.J.S.A. 40:55D-4. The statute provides that "[s]uch a use includes, but is not limited to, a hospital, school, child care center, group home, or a wind, solar or photovoltaic energy facility or structure." Ibid.

N.J.S.A. 40:55D-70(d) authorizes a board of adjustment, "in particular cases for special reasons," to

16

grant a variance to allow departure from regulations pursuant to [N.J.S.A. 40:55D-62] to permit: (1) a use or principal structure in a district restricted against such use or principal structure, (2) an expansion of a nonconforming use, (3) deviation from a specification or standard pursuant to [N.J.S.A. 40:55D-67] pertaining solely to a conditional use, (4) an increase in the permitted floor area ratio as defined in [N.J.S.A. 40:55D-4], (5) an increase in the permitted density as defined in [N.J.S.A. 40:55D-4], except as applied to the required lot area for a lot or lots for detached one or two dwelling unit buildings, which lot or lots are either an isolated undersized lot or lots resulting from a minor subdivision or (6) a height of a principal structure which exceeds by 10 feet or 10% the maximum height permitted in the district for a principal structure.

"The 'special reasons' requirement of the statute is also referred to as the 'positive criteria' for a use variance." Cox & Koenig, § 32-1.

The concluding section of N.J.S.A. 40:55D-70 provides in part that

[n]o variance or other relief may be granted under the terms of this section, including a variance or other relief involving an inherently beneficial use, without a showing that such variance or other relief can be granted without substantial detriment to the public good and will not substantially impair the intent and the purpose of the zone plan and zoning ordinance.

The two showings required by that provision -- called the "negative criteria" -- apply to applications both for variances sought pursuant to N.J.S.A. 40:55D-70(c) and for variances sought pursuant to N.J.S.A. 40:55D-70(d). See N.J.S.A. 40:55D-70.

17

2.

Case law has addressed the procedural requirements governing variance applications under N.J.S.A. 40:55D-70.

Five years before <u>Sica</u>, this Court held in <u>Medici</u> that "if the use for which a variance is sought is not one that inherently serves the public good, the applicant must prove and the board must specifically find that the use promotes the general welfare because the proposed site is particularly suitable for the proposed use." 107 N.J. at 4. For such settings -- in which the use is not inherently beneficial -- the Court deemed it appropriate "to require an enhanced quality of proof, as well as clear and specific findings by the board of adjustment, that the grant of a use variance is not inconsistent with the intent and purpose of the master plan and zoning ordinance." <u>Ibid.</u> The Court held that when no inherently beneficial use is at issue, the enhanced "proofs and findings must satisfactorily reconcile the grant of a use variance with the ordinance's continued omission of the proposed use from those permitted in the zone," and thus "provide a more substantive basis for the typically conclusory determination that the variance 'will not substantially impair the intent and purpose of the zone plan and zoning ordinance.'" <u>Ibid.</u> (quoting N.J.S.A. 40:55D-70(d)).

18

In Sica, the Court prescribed a procedure for variance applications in a setting that it had not considered in Medici: applications under N.J.S.A. 40:55D-70 for inherently beneficial uses. 127 N.J. at 159-68. That appeal arose from a physician's application for a variance to construct a "head-trauma residential-rehabilitation center" in Wall Township. Id. at 156 (internal quotation marks omitted). The zoning board rejected the application, finding that the application "did not satisfy Medici's enhanced standard of proof that the variance could not 'be granted without substantial detriment to the public good,' and that the variance would not 'substantially impair the intent and the purpose of the zone plan and zoning ordinance.'" Id. at 157 (quoting N.J.S.A. 40:55D-70).

The trial court reversed, assuming that the Medici enhanced proof requirement applied to the inherently beneficial use proposed but finding that the applicant had satisfied that standard. Id. at 158. The Appellate Division reversed the trial court's judgment, holding that the applicant in Sica fell short of Medici's enhanced standard of proof. Ibid.

On certification, the Sica Court first considered whether the enhanced standard of proof imposed in Medici should apply to variance applications for inherently beneficial uses such as the head-trauma center. Id. at 160. The Court held that "Medici does not impose any such requirement" and that "the

19

[Medici] opinion does not apply to inherently beneficial uses."  Id. at 160-61.

The Court then turned to a second issue:  "to what extent a use variance involving an inherently beneficial use must satisfy the negative criteria."  Id. at 162.  At the time -- prior to the 1997 Amendment -- the portion of N.J.S.A. 40:55D-70 that identified the negative criteria generally stated that "[n]o variance or other relief may be granted under the terms of this section unless such variance or other relief can be granted without substantial detriment to the public good and will not substantially impair the intent and the purpose of the zone plan and zoning ordinance."  L. 1991, c. 256, § 21 (eff. Aug. 13, 1991).

In Sica, the Court reasoned that "[a] too-strict reading of the negative criteria can result in the denial of many deserving inherently beneficial uses," and that unless the negative criteria were balanced against the benefits of the variance, "a local board's finding that an applicant has not satisfied the negative criteria would always defeat an inherently beneficial use, no matter how compelling the need for that use."  126 N.J. at 163-64.  Acknowledging that the Legislature had not expressly required a balancing of the positive and negative criteria in N.J.S.A. 40:55D-70, the Court viewed the first negative criterion -- the statute's "requirement that the grant of a variance must be

'without substantial detriment to the public good'" -- to implicitly endorse a balancing test. Ibid. (quoting N.J.S.A. 40:55D-70(d)).

The Court suggested, "as a general guide to municipal boards when balancing the positive and negative criteria," a four-part procedure. Id. at 165-66.

First, the Court held that a board "should identify the public interest at stake," noting that "[s]ome uses are more compelling than others" and providing examples of uses "sufficiently beneficial to satisfy the positive criteria." Id. at 165.

Second, the Court stated in Sica that a board "should identify the detrimental effect that will ensue from the grant of the variance." Id. at 166. It reasoned that "[c]ertain effects, such as an increase in traffic or 'some tendency to impair residential character, utility or value,' will usually attend any non-residential use in a residential zone." Ibid. (citing Baptist Home of S. Jersey v. Borough of Riverton, 201 N.J. Super. 226, 247 (Law Div. 1984), and quoting Yahnel v. Bd. of Adjustment of Jamesburg, 79 N.J. Super. 509, 519 (App. Div. 1963)).

Third, the Court noted in Sica that "in some situations, the local board may reduce the detrimental effect by imposing reasonable conditions on the use." Ibid. (citing Roman Cath. Diocese of Newark v. Borough of Ho-Ho-Kus,

21

47 N.J. 211, 224 (1966) (Hall, J., concurring); Baptist Home, 201 N.J. Super. at 247). The Court added that, "[i]f so, the weight accorded the adverse effect should be reduced by the anticipated effect of those restrictions." Ibid. (citing Baptist Home, 201 N.J. Super. at 246-47).

Fourth, the Court ruled that a board "should then weigh the positive and negative criteria and determine whether, on balance, the grant of the variance would cause a substantial detriment to the public good." Ibid. It observed that "[t]his balancing, '[w]hile properly making it more difficult for municipalities to exclude inherently beneficial uses,'" would "'permit[] such exclusion when the negative impact of the use is significant,'" and would "'also preserve[] the right of the municipality to impose appropriate conditions upon such uses.'" Ibid. (second alteration in original) (quoting Baptist Home, 201 N.J. Super. at 247).

Apart from its general reference to the "positive and negative criteria," the Sica Court did not address the second negative criterion in its test. See id. at 165-66.

Applying its new standard to the case before it, the Court stated in Sica that although it would ordinarily remand the matter to the local zoning board for reconsideration in light of the decision, it was satisfied that the board's power to "impose reasonable conditions suffices to control any adverse impact

of the" proposed trauma center.  Id. at 167.  It reversed the judgment of the

Appellate Division and reinstated the determination of the Law Division

ordering the grant of the variance.  Ibid.

3.

Five years after this Court decided Sica, the Legislature enacted the 1997

Amendment.  In the aspect of the Amendment directly relevant to this appeal,

the Legislature added the language underscored below to N.J.S.A. 40:55D-70:

> [n]o variance or other relief may be granted under the
> terms of this section, including a variance or other relief
> involving an inherently beneficial use, without a
> showing that such variance or other relief can be
> granted without substantial detriment to the public good
> and will not substantially impair the intent and the
> purpose of the zone plan and zoning ordinance.
>
> [L. 1997, c. 145, § 1.][1]

In a floor statement to a version of the bill, its Senate sponsor stated that

"[t]he bill would further clarify that there must be an independent showing that

a variance involving an inherently beneficial use can be granted without

substantial detriment to the public good and will not substantially impair the

intent and purpose of the zoning ordinance."  Statement by Senator Schluter to

---

[1]  We limit our analysis of the 1997 Amendment to the provision that
addressed the second negative criterion in N.J.S.A. 40:55D-70(d) as applied to
variance applications for inherently beneficial uses.  We do not address other
aspects of that Amendment.

23

S. 824 3 (Feb. 22, 1996); see also S. Cmty. Aff. Comm. Statement to S. 824 (June 3, 1996); A. Local Gov't Comm. Statement to S. 824 (Feb. 3, 1997).

After the Senate and General Assembly passed the bill, Governor Whitman conditionally vetoed it, recommending a change to the language of the proposed amendment to N.J.S.A. 40:55D-70(c) regarding bulk variances. The Governor then addressed the purpose of the amendment. She stated that "over the past several years, courts have determined that certain uses are inherently beneficial," and that,

> [i]n the courts' view, the determination that a use is inherently beneficial requires that the variance be issued, regardless of the local body's analysis using the MLUL. In effect, the courts have presented this new rule of law as an overriding factor which municipalities must consider when reviewing variance applications. This bill changes case law by restricting the standard's role in the variance application process.
>
> . . . .
>
> . . . The amendment to the use variance law clarifies that it is not enough for a use variance applicant to prove that the proposed use constitutes an inherently beneficial use; under this bill, an applicant must still prove that the use will not substantially impair the zoning plan. By restoring this balance, municipalities will again be able to evaluate a proposed use on a particular site to ensure that it does not have a negative impact on the overall zoning plan of the community.
>
> [Governor's Veto Statement to S. 824 1-2 (May 22, 1997).]

24

Although it did not identify the Sica standard by name, the Legislature appears to have amended N.J.S.A. 40:55D-70 in response to that standard.  See Cox & Koenig, § 36-2.8 (noting that the 1997 Amendment "must be seen as reinforcing the concept that the negative criteria apply equally in all cases, despite the impression that had developed that 'inherently beneficial' uses were somehow to be treated differently," and "[t]his impression had developed with regard to two issues discussed in [Sica]").

As we observed in the wake of the 1997 Amendment,

> even when a proposed use inherently benefits the general welfare, the applicant still must prove that the variance "can be granted without substantial detriment to the public good and will not substantially impair the intent and purpose of the zone plan and zoning ordinance."  In effect, the 1997 amendment serves as a reminder that even with an inherently beneficial use, an applicant must satisfy the negative criteria.
>
> [Smart SMR of N.Y., Inc. v. Borough of Fair Lawn Bd. of Adjustment, 152 N.J. 309, 324 (1998) (quoting L. 1997, c. 145 (codified at N.J.S.A. 40:55D-70)).]

In Salt & Light, the Appellate Division incorporated into its application of the fourth step of the Sica inquiry the question whether the applicant has made a showing that the variance can be granted without substantial detriment to the purpose of the zone plan and zoning ordinance.  423 N.J. Super. at 289-92.  It found the use at issue -- construction of a duplex for transitional

25

housing for the homeless -- to be an inherently beneficial use. Id. at 287.

Nonetheless, the appellate court upheld the zoning board's determination "that the public benefit to be derived from the replacement of a single four-bedroom residence with two, two-bedroom residences for the homeless was outweighed by the detrimental effect upon the integrity of the zoning plan for exclusively single-family residences that would result from construction of a duplex." Id. at 292. In the setting of that case, the Appellate Division reinstated the board's denial of the use variance application. Ibid.

C.

1.

As the text and legislative history of the 1997 Amendment make clear, the Legislature intended that in variance applications for inherently beneficial uses under N.J.S.A. 40:55D-70, applicants must make a specific showing with respect to the second negative criterion. See L. 1997, c. 145, § 1. That determination furthers a longstanding legislative objective: to incentivize municipalities to make zoning determinations through the planning process, not by the grant or denial of individual variance applications. See N.J.S.A. 40:55D-70, -89, -89.1; Medici, 107 N.J. at 5.

We conclude that the standard prescribed by Sica should be revised to incorporate N.J.S.A. 40:55D-70's statutory language regarding the second

negative criterion. We amend the fourth step of the Sica standard as follows, with new language underscored:

> Fourth, the Board should determine whether the applicant has made a showing that the variance or other relief sought will not substantially impair the intent and the purpose of the zoning plan and zoning ordinance. N.J.S.A. 40:55D-70.
>
> If the applicant has not made such a showing, the variance may not be granted. If the applicant has made such a showing, the Board should then weigh the positive and negative criteria and determine whether, on balance, the grant of the variance would cause a substantial detriment to the public good. This balancing, "[w]hile properly making it more difficult for municipalities to exclude inherently beneficial uses * * * permits such exclusion when the negative impact of the use is significant. It also preserves the right of the municipality to impose appropriate conditions upon such uses."
>
> [Sica, 127 N.J. at 166 (alteration and omission in original) (quoting Baptist Home, 201 N.J. Super. at 247).]

We offer the following comments on the application of this standard.

First, the showing that the Legislature mandated under N.J.S.A. 40:55D-70's second criterion is not identical to Medici's mandate that when a proposed variance is not for an inherently beneficial use, the applicant must present an enhanced quality of proof. Compare N.J.S.A. 40:55D-70, with Medici, 107 N.J. at 4. We reaffirm the Court's holding in Sica, 127 N.J. at

27

160-61, that the Medici enhanced quality of proof requirement does not apply when a variance is sought for an inherently beneficial use.

Second, with respect to the second negative criterion, the applicant cannot rely solely on the designation of the proposed use as an inherently beneficial use, but must instead present a showing analyzing the impact of the variance sought on the zoning plan and zoning ordinance. N.J.S.A. 40:55D-70; see, e.g., Smart SMR, 152 N.J. at 333-34; Sica, 127 N.J. 162-67; Salt & Light, 423 N.J. Super. at 291-92.

Third, in the inquiry about whether the applicant has shown that the variance sought will not substantially impair the zoning plan and zoning ordinance, the board's denial of a prior application for a variance for the same property is not itself dispositive, but may be an important consideration.

Fourth, the Legislature clearly envisioned that governing bodies and planning boards would document in detail their findings regarding zoning for inherently beneficial uses in the master plan and development regulations, and that they would revise those findings at least once a decade to account for changing conditions. See N.J.S.A. 40:55D-89, -89.1. Although it is impossible for a governing body or planning board to foresee every land use issue that may arise in a given municipality, the Legislature's objective in enacting N.J.S.A. 40:55D-70 is furthered by a detailed and comprehensive

28

public record of the planning process. Such a record informs the public about land use policy, alerts developers about potential obstacles to variance applications with respect to certain properties, and enables courts to effectively review zoning board decisions.

2.

Given the Legislature's direction that an applicant for a variance serving an inherently beneficial use make a specific showing regarding the second negative criteria -- and our incorporation of that requirement in the Sica standard in accordance with N.J.S.A. 40:55D-70 -- we view the proper remedy to be a remand to the Appellate Division for a limited proceeding.

We ask the Appellate Division to apply the Sica standard as amended in this opinion to the record in this case. The appellate court should determine whether JMC made a showing that the variance sought will not substantially impair the Township's zoning plan and zoning ordinance.

When the Appellate Division reviewed the trial court's determination, it declined to consider the Township's master plan, reasoning that the plan did not control because it "had not yet been adopted and had not included a specific vision for [JMC's] property." Based on the July 9, 2022 letter from the Township's counsel in the trial court, it appears that the Township's amended zoning plan was adopted before the Zoning Board's decision on

29

JMC's variance application but that the Township's zoning ordinance implementing the amended zoning plan had not been enacted at that time. We ask that the Appellate Division, as part of its inquiry on remand, clarify the status of the Township's amended zoning plan and zoning ordinance at the time of the Zoning Board's decision.

We express no view with regard to the outcome of the Appellate Division's application on remand of the Sica standard, as revised in this opinion.

## IV.

The judgment of the Appellate Division is reversed, and the matter is remanded to the appellate court for further proceedings in accordance with this opinion.

CHIEF JUSTICE RABNER and JUSTICES PIERRE-LOUIS, WAINER APTER, FASCIALE, NORIEGA, and HOFFMAN join in JUSTICE PATTERSON's opinion.